# Hogue *v.* Matthews.

*Application by Clerk of City Court, for Mandamus to Auditor.*

1. *Collection of solicitor's fees as part of costs.*—Under the provisions of the act approved February 25th, 1889, relating to the collection of costs on convictions of felony, where the defendant is sentenced to the penitentiary (Sess. Acts 1888–9, p. 55), the clerk of the court is required to make out and certify to the auditor a complete bill of costs, including the solicitor's fee; and the auditor, having found the same correct, is required to draw his warrant on the treasurer in favor of the clerk, for the sum so certified. By a subsequent act of the same session (*I b.* 91), solicitors are paid a fixed salary out of the treasury, and their fees as allowed by law, and taxed as costs, are required to be certified by them to the auditor, and charged by him against the clerk of the court, who is required to collect the costs so taxed, making quarterly returns and payments, and is allowed to retain five per cent. as commissions on his collections. *Held,* that the clerk is not entitled to have the solicitor's fee paid to him out of the treasury, in order that he may pay it back at the expiration of the current quarter, retaining his commissions for collection.

APPLICATION by petition by H. H. Matthews, clerk of the City Court of Montgomery, addressed to Hon. THOMAS M. ARRINGTON, the presiding juge of said court, for a *mandamus* directed to Hon. CYRUS D. HOGUE, State auditor, requiring him to draw his warrant on the State treasurer, in favor of the petitioner, for the amount of a bill of costs in a criminal case, duly certified to by him by the petitioner as clerk. The costs accrued in a prosecution against John Toliver for grand larceny, who was convicted, and sentenced to the penitentiary. The amount of the costs, as taxed and certified, was $72.75, and included a solicitor's fee of $30. Auditor Hogue refused to allow the item of $30, on the ground that the county solicitor of Montgomery was a salaried officer, that the solicitor's fee belonged to the State, and should be retained in the treasury. Judge Arrington granted a *mandamus* as prayed, there being no dispute about the facts; and his judgment is here assigned as error, the appeal being sued out under Code, § 3616.

WM. L. MARTIN, Attorney-General, for the appellant, cited Endlich on Statutes, § 258; *Pollard v. Brewer,* 59 Ala.

[Hogue v. Matthews.]

130; *Skinner v. Dawson*, 87 Ala. 348; *United States v. Kirby*, 7 Wall. 482; *Rich v. Smith*, 13 Wall. 162; *Ex parte Ellis*, 11 Cal. 222; Sess. Acts 1888–9, pp. 55, 91.

SAYRE & PEARSON, *contra*, relied on the words of the statute of February 25th, 1889 (Sess. Acts, p. 55), and cited *Bartlett v. Morris*, 9 Porter, 266; *Thornley v. United States*, 113 U. S. 310; *French v. Spencer*, 21 How. 228; *Yturbide v. United States*, 22 How. 290; *Lehman, Durr & Co. v. Robinson*, 59 Ala. 235.

McCLELLAN, J.—The act of February 25, 1889, "to provide for the payment of costs on convictions of felony, where the defendant is sentenced to imprisonment in the penitentiary," requires that upon such conviction and sentence "the clerk of the court in which the conviction is had shall make out a full and complete bill of costs in said case, which bill of costs shall contain," among many other specified items, "the solicitor's fee therein, and forward the same, duly verified, to the Auditor of the State." It is made the Auditor's duty to carefully examine the same, and, if found correct, to draw his warrant on the treasurer for the amount of said bill, not in excess of one hundred and fifty dollars. Acts 1888–9, p. 55.

On February 28, 1889, an act "to regulate the collection and payment of solicitors' fees into the State treasury" was passed. This act requires "solicitors of the different Circuit, City and Criminal Courts in this State, within ten days after the adjournment of said courts, to make out and deliver to the clerk of said courts, and also forward to the Auditor of the State, a certified statement, showing the number and names of the persons convicted at that term of the court, the date of the sentence, the character of the offense charged, and the amount of the solicitor's fee in each case." It is made the duty of the Auditor, upon the receipt of the said statement, to charge up, in a book kept for that purpose, the amount of the fees so verified (certified?), against the clerk of said court; and "such fees shall remain charged against said clerk, until he shall have fully paid over the same to the State Treasurer, and legally accounted therefor to the State Auditor." And it is made the duty of the clerk, commencing with the first day of April, 1880 (1890?), and every three months thereafter, "to report to the Auditor, and pay over to the Treasurer, all of the solicitor's fees by him so

[Hogue v. Matthews.]

collected under the provisions of this act; and for the collection and payment of such fees said clerk is authorized to retain out of said amount a commission of five per cent. The clerk is entitled to credit for the amount paid for exchange in remitting the amounts to the Auditor."—Acts 1888-9, p. 91.

The question involved in this case is, whether, under these statutes, the clerk of the City Court of Montgomery is entitled to have the solicitor's fee, in a case where sentence is to the penitentiary, paid to him out of the State treasury, in order that he may retain it until the first of the next quarter, then repay it to the State, charging and retaining for his services in collecting the amount out of the treasury, for the treasury, and paying it back into the treasury, five per cent. commissions thereon. The bare statement of the question demonstrates the absurdity which would result from giving to the statutes the construction contended for by the petitioner.

The commission allowed by the act of February 28, 1889, is, of course, intended as compensation for the services of the clerk, and to quicken his diligence, in collecting the fees which are adjudged against persons convicted of crime, payable nominally to the solicitor, but belonging to the State, and in paying the same into the State treasury. The whole end and object of the law is to get this money into the State treasury, where it belongs, and the allowance to the clerk is only a means to this end, a recompense for the performance of the duty which the law imposes on him to collect and pay it over. Conceding, for the moment, that upon a sentence to the penitentiary, there immediately exists in the treasury a sum of money which is the solicitor's fee in that case, we must convict the legislature of the most patent nonsense, before we can hold that, while they intend to get that money into the treasury, and, to that end solely, have provided compensation for the services of an officer in that behalf, they have also provided a means, not only for getting it out of the treasury, but for its being kept out for as long, it may be, as ninety days, and, moreover, have offered a bonus for its being taken out and kept out. All the presumptions of law are against a construction which would lead to such results, operating, as they do, to defeat the very purpose of the law-makers. "The presumption against absurdity," says Mr. Endlich, "in the provisions of a legislative enactment, is probably a more powerful guide to its construction,

than even the presumptions against unreason, inconvenience, and injustice. The legislature may be supposed to intend all these; but it can scarcely be supposed to intend its own stultification. . . . . . . And there is the strongest kind of presumption against the existence of that species of absurdity in the intention of the legislature which would consist in a design to defeat its own object."—Endlich on Statutes, §§ 264, 265, 267. And a construction which will eliminate consequences which could never be supposed to have been in the minds of the legislators, must be adopted, if thereby any field may be left for the operation of the statute.—*Ib.* § 295.

A sphere of operation for the act of February 25, 1889, as to the payment of solicitors' fees, is found in the fact that there are quite a number of county solicitors and solicitors of City Courts who do not receive salaries from the State, and whose fees in penitentiary cases are paid, or, more properly speaking, *advanced*, by the State to the clerks of their courts for themselves, or for their counties where salaries are paid by the counties. The act must, therefore, be held to mean that, whenever the solicitor, or the county, is entitled to the fee, it shall be paid to the clerk; but that it can not be so paid in any case where it has been earned by a solicitor who receives a salary from the State, and whose fees belong to the State.

Moreover, the duty imposed on the clerks by the act of February 28, 1889, to collect solicitors' fees, has reference solely to collection *from the defendant*, or his sureties, by voluntary payment, on execution, or out of the proceeds of his term at hard labor for cost, as the case may be. Upon every conviction, whether misdemeanor or felony, and whether the sentence is to the penitentiary or not, judgment goes against the defendant for costs. This judgment, as to solicitors' fees, is both nominally and beneficially in favor of the State, in the cases of salaried solicitors. The sums so adjudged to be due the State from defendants are charged up by the Auditor against the clerks, and it immediately becomes their duty to collect and pay over the same to the State. The fact that the defendant is put to hard labor in the penitentiary, and that the State receives his wages, is wholly unimportant, so far as his liability to the judgment for costs, and the clerk's duty to collect the same, are concerned. He is not put to hard labor, when sentenced to the penitentiary, for the costs, but only for the term fixed as a

punishment for the crime. The State receives nothing from his labor in satisfaction of the claim she has against him for the fee of the solicitor, but, on the contrary, her judgment against him in that behalf is still *in fieri*, and it remains the duty of the clerk to collect, not only that item, but the whole of the costs. And if the costs of other officers specified in the act of February 25, 1889, have been advanced by the State to them, as therein provided, they should nevertheless be collected out of the defendant's property, if possible, and the State reimbursed to the extent of such advancement. The solicitor's fee, in a given case, referred to in act of February 25, 1889, is, therefore, never in the treasury until it is collected by the clerk from the defendant, and by the clerk paid in. The charge made by the Auditor against the clerk can not be expunged, except by collection and payment on the one hand, or, on the other, by a showing by returns of *nulla bona* on executions against the defendant that it can not be collected. It would be an anomaly, too gross to be tolerated, to hold that the State should, out of its general fund, or otherwise, supply the clerk with money with which to pay a claim it has against him, and, in addition thereto, pay him five per cent. of the amount due for paying it with her own funds, with or in which neither the clerk nor the party from whom it is the clerk's duty to collect have any connection or rights whatever. If the contention here is sound, the clerk might make two collections in any case— first, from the State, and again from the defendant—and two payments of the same item to the State, retaining five per cent on each. This demonstrates, not only the fallacy of the position, but also that, if it were possible for a clerk to have the fee advanced to him in any penitentiary case, he would not be allowed to retain any commissions on its payment to the State. We need not pursue the matter further. We hold, that the only collection which the clerk can make under the act of February 28 is from the defendant; the only payment he can make the State is of fees which he has collected from the defendant; and the only commissions he is entitled to retain are on moneys thus collected and paid in.

The judgment of the City Court, granting a peremptory writ of *mandamus*, is reversed; and it is here ordered and adjudged, that the petition therefor be dismissed, at the cost of the petitioner, in this court and the court below.